### THE WEST BROOKLYN.

#### (District Court, S. D. New York. February 7, 1899.)

COLLISION—EXCESSIVE SPEED—FOG.

> A tug returning from sea with two dumps in tow on a hawser collided at about 12 midnight, in a thick fog, with a ferryboat. Both boats gave proper signals, which were heard by each some four or five minutes before the collision, which occurred at about right angles. Each claimed that his own boat was stopped at the time of the contact. This evidence was rendered improbable from the severe injuries suffered by both vessels. The lights of the colliding vessels were discovered at a distance of from 100 to 200 feet. *Held,* that both vessels were in fault, in not sufficiently reducing their speed so as to have been able to come to a full stop after the discovery of the lights.

In Admiralty.

Carpenter & Park, for libelant.
James J. Macklin, for claimant.

BROWN, District Judge. The collision occurred in the main ship channel, off the lower end of Governor's Island, at about 11:45 p. m. of December 9, 1897, in thick fog. The libelant's tug, J. A. Dumont, was returning from sea, with two dumps in tow upon a hawser. The ferryboat was bound from the Battery to Thirty-Ninth street, South Brooklyn. She met with thick fog before reaching Port William, passed to the westward of it on her usual course, and soon heard the fog signals of the Dumont a little on her starboard bow. Her signals were one long and two short whistles, indicating a tow. The ferryboat gave the proper signal, and both sides agree that these signals were heard by each, some four or five minutes before the collision. The collision occurred at about right angles, as both also agree. Each side claims that his own boat was stopped in the water at the time of contact, and each contends that it did not change much from its proper course. The tug admits porting a point or two. Both agree that the lights could not be seen above 100 or 200 feet off.

I have carefully considered the evidence on all the contested points. I am satisfied that neither boat was stopped at the time of collision. Had the tug been stopped, as contended, it is impossible that such a dent could have been made in the side of the ferryboat as was made in the wearing piece of the guard; had the ferryboat been stopped, it is impossible that such marks could have been made near the tug's bitts, or so much broken and carried away of her stem and starboard bow.

2. The pilot's testimony is very positive that at the time of collision, he was heading S. ½ W., and that the place of collision was too much to the northward to admit of turning to port to make the course towards the Brooklyn landing. In that situation, had both vessels kept their ordinary courses, the angle of collision would not have exceeded one or two points at most. It is in the highest degree improbable that the ferryboat at that place should have been turned so as to run upon the flats near Governor's Island; and I have no doubt, therefore, that the principal part of the change in order to make the collision nearly at right angles, was due to a change of course by the tug; and the evidence indicates that this may have been in part, at least, owing to inaccuracy in the compass, the deviation of which was not known to the pilot of the tug.

The collision was partly due, therefore, to the course of the tug too much to the eastward, either by some general error in her course, or, as is more probable, from porting when the pilot thought he heard the ferryboat's whistle on his port bow. There is great liability to err in locating the position of sound in fog (The Lepanto [D. C.] 21 Fed. 651, 657); and if the tug had been on the proper course upstream in that locality when the ferryboat's whistles were first heard, the whistles must have been either nearly dead ahead, or a little on the starboard bow instead of on the port bow. But besides this, the tug in so dense a fog and with a tow on a hawser behind her, ought to have proceeded more slowly after the ferryboat's whistles were heard, so as to be able to come to a full stop in the water before collision after the ferryboat's lights were seen 100 or 200 feet distant. The same obligation rested on the ferryboat also. The fact that the collision was at right angles and not nearly head and head, made it easier for each boat to come to a full stop in the water before collision. There was abundant time for this after the signals were heard by each. Had either sufficiently reduced her speed, as she was bound to do, it is plain that upon a right-angled collision no serious damage could have been done by either to the other.

The libelant is therefore entitled to a decree for half damages only.